UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS VINCENZINI,<br><br>    Plaintiff,<br><br>v.<br><br>TRANSITAMERICA SERVICES, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-00645-JSW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 21 |

Now before the Court is the Motion for Summary Judgment filed by Defendant Transit America Services, Inc. ("TASI"). The Court has considered the parties' papers, relevant case law, and the record in this case, and it finds the matter suitable for disposition without oral argument. Civ. L.R. 7-1(b). For the following reasons, the Court GRANTS TASI's motion.

## BACKGROUND

**A.    Factual Background.**

Unless otherwise noted, the following facts are undisputed.

TASI is a wholly owned subsidiary of Herzog Transit Services, Inc. ("HTSI"). TASI operates Caltrain's passenger rail system, which provides passenger services from San Francisco to Gilroy.

Vincenzini was a TASI locomotive engineer from 2012 until his termination in 2020. In addition to his work as an engineer, Vincenzini served as the local chairman and legislative representative for his union, the Brotherhood of Locomotive Engineers and Trainmen ("BLET". In his role with the union, Vincenzini made numerous complaints about safety and working conditions for TASI engineers. Vincenzini worked with BLET State Chairman Ryan Snow to make his complaints. At least one of those complaints resulted in the Federal Railroad

Administration ("FRA") taking adverse action against TASI, and other complaints resulted in investigations by the FRA or Cal-OSHA which resolved short of official action.

Vincenzini had been disciplined on two occasions prior to the incidents giving rise to this lawsuit. In July 2012, Vincenzini was suspended for 30 days due to failure to stop his train at a signal displaying a "stop" indication. In April 2015, Vincenzini was suspended for 30 days for operating a train over a crossing at more than 10 miles per hour above the maximum speed.

At the relevant times and today, Caltrain passenger rail cars use Positive Train Control ("PTC") to help prevent collisions and derailments, as well as unsafe movements into work zones or through an improperly positioned switch. The Caltrain Employee Timetable and System Special Instructions ("SSI") No. 8, effective October 7, 2019, permitted engineers to disable PTC only when authorized by the dispatcher.

TASI contends that PTC will automatically cause a train to brake if it senses a hazard or if the engineer exceeds the safe maximum speed. (Dkt. No. 21-2, Declaration of Nicholas Freeman ("Freeman Decl."), ¶ 44.) Vincenzini contends that PTC does not immediately activate the braking system, but instead alerts the engineer that the train is speeding. (Dkt. No. 30, Declaration of Marc Beauchamp ("Beauchamp Decl."), ¶ 3.) Then, if the engineer does not decelerate, the PTC will override the engineer and stop the train. (*Id.*)

Vincenzini was trained on PTC in May and August 2019. Vincenzini was further trained on safety rules, and he took rules exams in 2019 and 2020.

The parties agree that on August 4, 2020, Vincenzini disabled the PTC on his train one stop prior to his final destination without obtaining authorization from the dispatcher. TASI contends that Vincenzini also disabled the PTC without authorization four additional times: once on July 30, twice on July 31, and once on August 3, 2020. The PTC recorder records reflect that the PTC was disabled, and, on four of the five occasions, the train exceeded the maximum speed limit while the PTC was disabled.

In one of those incidents, TASI contends that Vincenzini disabled the automatic brake valve ("ABV"). This is reflected in the PTC recorder records. (Freeman Decl., ¶ 54.) Disabling the ABV means that the train cannot brake. (*Id.* ¶ 39.) When the ABV is reactivated, the brakes

must undergo an air brake test to ensure that the brakes will reengage. (*Id.* ¶ 41.) The test may not be performed while the train is in motion. (*Id.*) It is possible that the brakes will not reengage when the ABV is reenabled, meaning that the train may only be stopped with the emergency brake and may crash. (*Id.* ¶ 39-41.) The parties agree that they have never heard of an engineer, other than Vincenzini, disabling the ABV while a train is in motion because of the serious safety risks.

Vincenzini's own purported expert Marc Beauchamp submitted a declaration that, in his opinion, "to a high degree of confidence, . . . the four PTC cutouts reflected on the data recorders on July 30, 31 and August 4 took place and were not software glitches." (Beauchamp Decl., ¶ 13.)

TASI terminated Vincenzini following an investigation and hearing into the five incidents. Then-TASI General Manager Nicholas Freeman made the ultimate decision to terminate Vincenzini.

The Court will address additional facts as necessary.

**B.      Procedural Background.**

Vincenzini exhausted the administrative procedures available to him: a CBA-mandated investigation hearing; an appeal of the termination decision; and arbitration with the Public Law Board.

Vincenzini filed suit in state court in the Superior Court of Santa Clara County, California. TASI removed the action to this Court on the basis of diversity jurisdiction. (Dkt. No. 1.) Vincenzini originally brought five causes of action, of which three were dismissed by stipulation. (Dkt. Nos. 18, 20.)

Vincenzini's remaining claims are (1) retaliation in violation of California Labor Code section 1102.5 and (2) common law wrongful termination in violation of public policy. TASI now argues that it is entitled to summary judgment on the remaining claims.

## ANALYSIS

**C.      Legal Standards Applicable to Motions for Summary Judgment.**

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case.

3

1  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if there is
2  sufficient evidence for a reasonable jury to find for the non-moving party.  *Id.* at 248-49.
3        The party moving for summary judgment bears the initial burden of identifying those
4  portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine
5  issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  When the moving
6  party has met its burden, the nonmoving party must go beyond the pleadings and, by its own
7  affidavits or discovery, set forth specific facts to show that there is a genuine issue for trial.  *Id.*
8  The Court views the evidence in the light most favorable to, and makes all reasonable inferences
9  in favor of, the nonmoving party.  *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).

**D.   Evidentiary Objections.**

    **1.   TASI's Objections to Vincenzini's Evidence.**

      TASI objects to expert testimony offered by Marc Beauchamp in paragraphs 15 through 17 of his declaration because Beauchamp did not provide an expert report pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).  In paragraphs 15 through 17, Beauchamp offers his opinion regarding PTC data recorder records for Vincenzini that he did not review in the normal course of his duties.  Instead, Beauchamp "was provided with" the Notice of Investigation Letter and certain exhibits from Vincenzini's disciplinary hearing, which he analyzed for this action.  (Beauchamp Decl., ¶ 10.)  Opinions beyond the scope of one's own observations which are solicited for trial are retained expert opinions.  *See Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) (holding "treating physicians" could testify to opinions formed in course of treatment but not as to opinions on information provided by attorney for trial without timely submitting written reports); *Burreson v. BASF Corp.*, No. 2:13-CV-0066 TLN AC, 2014 WL 4195588, at *4 (E.D. Cal. Aug. 22, 2014) (applying "treating physician" rule to farmers).  Because Beauchamp did not submit an expert report, he may not testify to the opinions he formed based upon the PTC data recorder records.  TASI's objection to paragraphs 15 through 17 is SUSTAINED.

      TASI also objects to paragraphs 5, 15, and 18 of the Beauchamp Declaration for speculation and lack of relevance.  The objections are SUSTAINED.

4

1   TASI objects to the entire declaration of Mark Kenny on the basis of hearsay, irrelevance, and lack of evidentiary value. The Court did not rely on the Kenny Declaration in resolving the motion and thus DENIES the objection as moot.

TASI objects to the entire declaration of Jordan Coleman, and more specifically to paragraphs 5, 7-10, 12, 15, and 16 because Coleman offers opinion testimony, hearsay, irrelevant statements, and/or his statements lack foundation. The objections are SUSTAINED.

**2.  Vincenzini's Objections to TASI's Evidence.**

Vincenzini objects to consideration of the internal appeal and PLB decision as irrelevant and unduly prejudicial. The Court SUSTAINS the objections.

Vincenzini objects to the portion of his deposition cited on page 19, lines 16 through 18 as calling for a legal conclusion or contention. The Court DENIES the objection. Vincenzini was not asked for a legal conclusion, but rather for information in support of his contentions.

Vincenzini objects to TASI's citation on reply of the FRA Safety Advisory as irrelevant, lacking foundation, and improperly introduced on reply. The Court did not rely on the FRA Safety Advisory in resolving the motion and thus DENIES the objection as moot.

**E.  TASI Is Entitled to Summary Judgment on Vincenzini's Section 1102.5 Claim.**

California Labor Code section 1102.5, subdivision (b) prohibits employers from retaliating against employees for disclosing information "to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation. . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal [law]." Cal. Lab. Code § 1102.5(b). The statute "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." *Green v. Ralee Eng'g Co.*, 19 Cal.4th 66, 77 (1998).

Employees bringing suit pursuant to Section 1102.5 must first demonstrate, by a preponderance of the evidence, that whistleblowing activity was a "contributing factor" in an adverse action against the employee. Cal. Lab. Code § 1102.6. "This means plaintiffs may satisfy their burden of proving unlawful retaliation even when other, legitimate factors also contributed to

5

the adverse action." *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal.5th 703, 713-14 (2022).

The burden then shifts to the employer to show, by clear and convincing evidence, that the employer would have taken the same adverse employment action for "legitimate, independent reasons even if the employee had not engaged in [protected] activities." *Id.*; *see Lawson*, 12 Cal.5th at 712 (holding that "section 1102.6, and not *McDonnell Douglas*, supplies the applicable framework for litigating and adjudicating section 1102.5 whistleblower claims"). It is not enough that the employer could have terminated the employee for legitimate reasons; the employer must demonstrate "by clear and convincing evidence, that it would have" terminated the employee in the absence of the whistleblowing activity. *Id.* at 718.

TASI argues that it is entitled to summary judgment as to all claims because Vincenzini's protected activities were not a contributing factor to any adverse employment action, and TASI had legitimate, non-retaliatory reasons for taking adverse employment actions against Vincenzini. TASI further argues that certain of Vincenzini's claims are time-barred or otherwise fail as a matter of law.

Vincenzini argues that genuine issues of material fact remain as to all claims.

1.  **Vincenzini's Section 1102.5 Claim Is Not Untimely, but Civil Penalties Are Unavailable.**

TASI argues that the Section 1102.5 claim is barred by the one-year statute of limitations under California Code of Civil Procedure section 340, which applies to "action[s] upon a statute for a penalty." Cal. Code Civ. Proc. § 340(a). Vincenzini argues that the three-year statute of limitations applicable to "action[s] upon a liability created by statute, other than a penalty or forfeiture" should apply. *Id.* § 338(a).

In analyzing this same question, the district court in *Ayala v. Frito Lay, Inc.* determined that Section 1102.5 "forms the basis for two distinct claims." 263 F. Supp. 3d 891, 916 (E.D. Cal. 2017). A claim for damages to remedy individual harms would be subject to the three-year statute of limitations. *Id.* On the other hand, a claim for civil penalties to "redress public wrongs" would be subject to the one-year statute. *Id.* at 917. "The appropriate limitations period will depend on the nature of the cause of action presented by plaintiff—that is, whether plaintiff brings a claim

6

1 under [Section] 1102.5 or [Section] 1102.5(f)." *Id.*

2     The Court finds *Ayala*'s reasoning persuasive. Here, Vincenzini seeks "damages" under Section 1102.5, as well as "civil penalties" under Section 1102.5(f). (Dkt. No. 1, Ex. A, Compl., ¶¶ 21-22; *id.* at Prayer for Relief.) These two requests for relief represent two distinct claims with distinct applicable limitations periods. Vincenzini brought suit in 2022, more than one year but less than three years after termination. Thus, Vincenzini's request for civil penalties under Section 1102.5(f) is time-barred, but his claim for compensatory damages is not.

    **2.    A Reasonable Jury Could Find that Vincenzini Engaged In Protected Activity, but Vincenzini Fails to Produce Evidence Showing His Protected Activity Was a Contributing Factor to His Termination.**

    According to TASI, Vincenzini cannot make a showing that he engaged in protected activity or that his protected activities resulted in retaliation by TASI. Vincenzini disagrees.

    **a.    Vincenzini Identifies Protected Whistleblowing Activity.**

    Disclosure of information is protected if the employee reasonably believes that the information shows a violation of a statute, rule, or regulation, at the time it was reported. *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 988 (9th Cir. 2022). "[T]he relevant inquiry is not whether the conduct 'actually violated' any specific statute or regulation, but whether the plaintiff 'reasonably believed' " that it did so. *Id.* (emphasis removed). "Reasonableness" is typically a question of fact not suitable for determination on summary judgment. *Id.* at 990 (citing *Terry v. Atl. Richfield Co.*, 72 Cal. App. 3d 962, 966 (1977)). Even so, courts have considered the identification of specific statutes, rules, or regulations that were allegedly violated when evaluating whether the plaintiff has put forth evidence of a genuine dispute as to the reasonableness of his belief. *See Love v. Motion Indus., Inc.*, 309 F. Supp. 2d 1128, 1135 (N.D. Cal. 2004) (finding plaintiff's failure to identify law undermined reasonableness of belief).

    TASI identifies seven complaints made by Vincenzini to the FRA or raised at Safety Committee meetings between February 2019 and April 2020 as the universe of disclosures made by Vincenzini. It argues that Vincenzini lacks evidence showing that he reasonably believed he was reporting illegal activity by raising any of those seven issues. Vincenzini responds that his whistleblowing activity was not limited to those seven complaints, and that in any event his

7

whistleblowing was based on a reasonable belief because at least one of the seven complaints resulted in a finding from the FRA that TASI violated applicable rules or regulations.

The Court agrees with Vincenzini. Vincenzini submitted a declaration declaring that he would only pursue a complaint if he and BLET State Chairman Snow had "reason to believe that the safety or health concern violated a rule or regulation that could be addressed and remedied by the [relevant] agency." (Vincenzini Decl., ¶ 3.) Vincenzini's beliefs were reasonable, at least at times, given that at least one of the identified complaints resulted in enforcement measures from the FRA. (Dkt. No. 31, Snow Decl., ¶ 15, Ex. 9.) Vincenzini has shown he engaged in protected activity.

### b. Vincenzini Lacks Evidence of Causation Between the Whistleblowing Activity and the Termination.

TASI asserts that Vincenzini has no evidence connecting his protected activity to his termination. In support, TASI cites deposition testimony in which Vincenzini was asked to identify evidence linking each safety complaint to retaliation and failed to do so. TASI further posits that Vincenzini failed to produce any evidence that it was aware of any of Vincenzini's reports to the FRA or other regulators. Vincenzini disputes that evidence of retaliatory intent is required for a Section 1102.5 claim, and, if it were required, asserts that intent could be inferred from circumstantial evidence.

Evidence of retaliation will rarely be direct. A plaintiff may prove causation through circumstantial evidence, including the plaintiff's overall job performance, temporal proximity between the protected activity and termination, and whether or not the plaintiff was treated differently than similarly-situated employees who did not engage in protected activity. *See Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 462 (9th Cir. 2018) ("close temporal proximity" between safety test and firing supported inference firing motivated by safety test); *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1162 (C.D. Cal. 2013) (explaining disparate treatment of similarly situated employees may raise inference of discrimination); *Scheer v. Regents of the Univ. of Calif.*, 76 Cal. App. 5th 904, 917 (2022) (noting "[c]ircumstantial evidence typically relates to such factors as the plaintiff's job performance, the timing of events, and how the plaintiff was

treated in comparison to other workers") (quoting *Colarossi v. Coty US Inc.*, 97 Cal. App. 4th 1142, 1153 (2002)). Vincenzini fails to provide circumstantial evidence of a connection between his protected activities and his termination.

### i. Vincenzini's Job Performance.

Strong overall job performance supports an inference of retaliation. *Colarossi*, 97 Cal. App. 4th at 1154 (noting increased scrutiny and termination of employee suspicious given her "vast experience and excellent work record"). Here, Plaintiff had a checkered performance history. At the time of his termination, Plaintiff was not on probation or otherwise in poor standing. (Vincenzini Decl., ¶ 31.) Plaintiff had previously been suspended on two occasions for unsafe practices. (Freeman Decl., ¶¶ 34-35.)

However, FRA regulations provide that railroads "shall" consider "only conduct. . . that occurred within a period of 36 consecutive months prior to the determination" of whether to revoke an engineer's certification. 49 CFR § 240.117(d). The latest of Vincenzini's suspensions was five years prior to Plaintiff's termination, in April 2015. (Freeman Decl., ¶ 35.)

Vincenzini was not racking up awards for superior performance, nor was he recently engaged in a history of unsafe conduct. This factor is neutral.

### ii. Temporal Proximity.

Proximity in time between protected activity and adverse employment action may alone give rise to an inference of causation if the events are "very close" in time. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Timing alone is weak evidence of retaliation. *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 353-54 (2008). "In the classic situation in which temporal proximity is a factor, an employee has worked for the same employer for several years, has a good or excellent performance record, and then, after engaging in some type of protected activity. . . is suddenly accused of serious performance problems, subjected to derogatory comments about the protected activity, and terminated." *Id.*

Vincenzini argues that the temporal proximity was nearly instantaneous: he was suspended pending hearing on the same day that the FRA closed its investigation into his last documented complaint. (Snow Decl., ¶ 25, Ex. 18.) TASI argues that the protected activity was months prior

9

1   to termination, and that temporal proximity should be disregarded due to Vincenzini's intervening
2   safety violations.
3       Vincenzini made his last safety complaint in March 2020 but was not suspended until
4   August 2020. (*Id.*, Ex. 17.) This multi-month gap is too removed to be relevant. *See Clark Cnty.*
5   *Sch. Dist.*, 532 U.S. at 273-74 (citing with approval cases holding 3- and 4-month periods to be
6   too remote to suggest causation).
7       Moreover, Vincenzini breached company policy to disable the PTC and ABV in the period
8   in which the FRA conducted its investigation. Vincenzini's intervening safety violations
9   undermine any inference of causation. *See Arteaga*, 163 Cal. App. 4th at 354 (holding that
10  employees "may not raise an old wound as a preemptive strike to escape appropriate discipline").

### iii. Disparate Treatment.

Lastly, Vincenzini argues that TASI treated him differently than other engineers who made similar violations. "[E]mployees are similarly situated to a plaintiff if they perform similar work responsibilities or are guilty of similar misconduct." *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1162 (C.D. Cal. 2013). The misconduct must be "of comparable seriousness." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004).

In support, Vincenzini offers the declaration of Mr. Beauchamp, a former PTC foreman, who asserts that it was common practice for TASI engineers to cut-out the PTC system even with passengers on the train. (Beauchamp Decl., ¶ 14.) Beauchamp was no longer the PTC foreman at the time of Vincenzini's conduct; Beauchamp transitioned away from the PTC program on December 10, 2019, more than seven months prior to Vincenzini's unauthorized PTC cut-outs. (*See id.* ¶ 2.) He was not in a position to know the common practice at the time of Vincenzini's conduct. Moreover, Beauchamp acknowledges that Vincenzini "should have sought approval from the dispatcher before cutting out the PTC." (*Id.* ¶ 14.) Beauchamp does not attest that other engineers routinely cut out the PTC without authorization and with passengers aboard the train.

Vincenzini further states that another engineer, Phil Smith, told Vincenzini that he "was found to have cut out PTC without authorization and was not subjected to formal discipline." (Vincenzini Decl., ¶ 23; Coleman Decl., ¶ 8.) The Court sustains TASI's hearsay objection to this

10

evidence. (Reply, at 15:20-21.) Vincenzini offers no admissible evidence to show that Phil Smith cut out the PTC without authorization and did not face discipline. Nor does Vincenzini provide any information demonstrating that Smith's position, experience, and training were comparable to his own.

Vincenzini also asserts that yet another engineer, Gary Stagno, was accused of cutting out the ABV but was not charged with discipline. (Vincenzini Decl., ¶ 23; Coleman Decl., ¶ 9.) Vincenzini submits an email from Stagno in which Stagno recounts the following:

> So I began to tell Griff that I was coming through mt view and my ptc screen turned red and was flashing.when I told Griff this he told me no way that doesn't happen and said I cut out the automatic brake valve..I told him I didn't and he called for Chad cold.i was on speaker phone because I heard Griff tell Chad that I told him the screen turned red and was flashing.chad told Griff that yes it happens. . . Also told Griff that he didn't care about what I had to say he already had it in his mind that I was guilty thats why I wanted the locomotive tapes pulled to show that I wasn't negligent.didnt hear anything about it after that.

(Vincenzini Decl., ¶ 23, Ex. A (as written).) Stagno's story differs from Vincenzini's situation in several significant ways. First, the email is dated September 15, 2020, but Stagno does not provide information regarding the timing of the incident, such that it is unclear what policies or technologies would have been in place at the time. Stagno does not say whether there were passengers aboard the train during the incident, as there were during Vincenzini's trips. Vincenzini provides no information about Stagno's position, experience, training, or the like to demonstrate that he and Stagno were similarly situated.

Vincenzini fails to make a showing that he was subject to disparate treatment from other similarly situated employees who did not engage in whistleblowing activity.

**3.    TASI Demonstrated Legitimate and Independent Reasons for Termination.**

TASI next argues that, even if that Vincenzini had shown a genuine issue of material fact as to whether his protected activity was a contributing factor to his termination, TASI would have terminated Vincenzini due to his conduct in disabling the PTC and ABV. Vincenzini claims that TASI has not met its burden to show that it would have terminated his employment in the absence of whistleblowing by clear and convincing evidence. To prevail, TASI must show "by clear and convincing evidence that the alleged action would have occurred for legitimate, independent

11

reasons even if [Vincenzini] had not engaged in activities protected by Section 1102.5." *Vatalaro v. Cnty. of Sacramento*, 79 Cal. App. 5th 367, 391 (2022) (quoting Cal. Lab. Code § 1102.6). "Clear and convincing" means that the evidence is "so clear as to leave no substantial doubt' and "sufficiently strong to command the unhesitating assent of every reasonable mind." *In re Angelia P.*, 28 Cal.3d 908, 919 (1981) (quoting *Sheehan v. Sullivan*, 126 Cal. 189, 193 (1899)).

TASI offers several legitimate reasons for Vincenzini's termination. Vincenzini disabled the PTC on five occasions without authorization and with passengers on board. (Freeman Decl., ¶ 6.) On one of those occasions, Vincenzini disabled the ABV, which created a risk that the brakes would not reengage and cause the train to crash. (*Id.* ¶ 19.) On four of the five occasions, Vincenzini exceeded the speed limit. (*Id.* ¶ 14.) After each of these rides, Vincenzini submitted paperwork falsely representing that the PTC was enabled for the entire trip. (*Id.* ¶¶ 55-59.) The PTC data recorder records from the trips at issue reflect that the PTC was disabled and the ABV cut out. (Vincenzini Decl., ¶¶ 24, 26-30, Exs. B-F; Beauchamp Decl., ¶ 12.)

Vincenzini does not deny that he engaged in the above conduct. He admits to disabling the PTC without authorization on one occasion. (Vincenzini Decl., ¶ 19.) Vincenzini does not "recall" cutting the ABV and claims he "did not know how to cut out an ABV when a train is in motion," but he does not deny that the ABV may have been cut on his train. (*Id.* ¶ 22; Vincenzini Dep., 94:7-17.) Vincenzini does not recall, but does not deny, that he cut the PTC on the remaining occasions. (Vincenzini Dep., 92:20-94:5.) Vincenzini's failure to recollect does not create a genuine issue of material fact as to whether he cut out the PTC and ABV. *See Fed. Election Comm'n v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002) (holding district courts may treat "facts as established for purposes of summary judgment" where nonmoving party "claims no recollection or that he was unaware" of the facts).

Even if the Court were to credit Vincenzini's lack of memory as somehow creating a dispute of material fact as to whether he committed the charged safety violations, Vincenzini has failed to demonstrate an issue of fact as to whether TASI believed he committed the safety violations. TASI conducted a random audit of PTC records and found, in the recorder information, that the PTC was cut out. (Freeman Decl., ¶ 49; Beauchamp Decl., ¶ 12.) Vincenzini

does not provide evidence to show that Freeman should not have relied upon the recorder records to determine that five unauthorized cut-outs and one ABV cut-out occurred. In the event the records reflect a glitch and were inaccurate, TASI would not be liable for relying on those records. *See Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 344 (2008) (holding "[t]he employer may fire an employee for. . . a reason based on erroneous facts. . . as long as its action is not for a discriminatory reason.").

No reasonable jury could dispute that a crash caused by disabling safety devices, including the brakes, without authorization and with passengers aboard the train would be catastrophic. TASI has demonstrated that its justification for terminating Vincenzini is legitimate and independent by clear and convincing evidence.

Accordingly, the Court grants summary judgment on the Section 1102.5 claim in TASI's favor.

### F. TASI Is Entitled to Summary Judgment on Vincenzini's Claim for Wrongful Termination in Violation of Public Policy.

TASI argues that Vincenzini's wrongful termination in violation of public policy claim is "tethered" to his Section 1102.5 claim, and thus must fail. (Dkt. No. 21, Mot., at 21:19-20.) Vincenzini responds that the claims are distinct because the public policy claim includes allegations that TASI violated 49 U.S.C. section 20109, which prohibits TASI from taking adverse employment actions against an employee's whistleblowing activity even if the employee does not identify specific statutes or regulations that the employee believes have been violated. *See* 49 U.S.C. § 20109(b)(1)(A) (providing that "a railroad carrier[] shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for… reporting, in good faith, a hazardous safety or security condition"); (Compl., ¶ 41.).

This distinction does not save Vincenzini's public policy claim. Although the Court finds that Vincenzini reported hazardous safety or security conditions in good faith, Vincenzini fails to produce any evidence linking his reporting activity to his termination. As discussed above, TASI demonstrated, by clear and convincing evidence, that it would have terminated Vincenzini in the absence of any protected activity due to Vincenzini's numerous safety violations.

1    Accordingly, the Court grants summary judgment on the public policy claim in TASI's favor.

## CONCLUSION

For the foregoing reasons, the Court grants TASI's motion for summary judgment. This Order shall constitute the judgment in this matter. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December 4, 2024

_____
JEFFREY S. WHITE
United States District Judge